UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| TODD PERDUE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>APACHE CORPORATION. | **Case No.: 4:20-cv-00023**<br>Collective Action (29 U.S.C. § 216(b)) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Apache does not pay overtime to its pipeline inspectors. Instead, Apache pays these workers a day rate with no overtime compensation, even though they work many hours in excess of forty hours per week. Because this practice results in non-payment of overtime wages to Tod Perdue and other similarly situated workers, Perdue brings this collective action to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA").

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Perdue's claim occurred in this district.

### THE PARTIES

4. Perdue was employed by Apache as a pipeline inspector.

5. Apache is a multi-billion-dollar oil and gas company with operations in different countries around the world and in multiple states in this country.

6. At all relevant times, Apache's gross annual revenues exceeded $5 billion.

7. As part of its operations, Apache builds gas pipelines.

8. Apache employed and/or jointly employed Perdue and the Class Members to inspect the pipelines.

9. Perdue brings this action on behalf of himself and all other similarly situated pipeline inspectors who were paid a day rate with no overtime pay who and worked on pipelines for Apache.

10. Apache paid these workers a day rate, without overtime pay required by the FLSA.

11. Perdue's written consent to be a party plaintiff is attached as Exhibit A.

12. Perdue seeks to represent a class of similarly situated day rate workers under the FLSA pursuant to 29 U.S.C. § 216(b) that is defined as:

> **All current and former inspectors working on pipelines for Apache and who were paid a day rate during the last three years (the "Class Members").**

### FACTS

13. At all times hereinafter mentioned, Apache has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all times hereinafter mentioned, Apache has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15. At all times hereinafter mentioned, Apache has been, or has been part of, an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than the statutorily required $500,000 (exclusive of excise taxes at the retail level which are separately stated).

16. Perdue and the Class Members performed duties for Apache that were integral to its operations, including inspecting pipelines.

17. Perdue and the Class Members perform routine pipeline inspection work to ensure the pipeline meets standardized requirements.

18. Perdue ensured Apache's pipelines met standard criteria required by Apache, its customers, and landowners.

19. For example, if the landowner agreement called for brush removal., Perdue's inspection included verifying the brush was removed.

20. Another example of the kind of inspection work Perdue performed was to inspect the backfill material placed around the pipeline for rocks or other objects that could harm the pipe's protective coating.

21. The duties of pipeline inspectors like Perdue and the Class Members do not require a college degree and are usually performed by workers whose highest level of formal education is a high school diploma.

22. Perdue was employed by Apache from July 2017 to May 2018.

23. Apache paid Perdue and the Class Members a day rate with no overtime premium for hours worked in excess of 40 in a workweek.

24. Throughout Perdue's employment with Apache, Apache paid him on a day rate basis.

25. Perdue and the Class Members work for Apache under its day rate pay scheme.

26. If Perdue and the Class Members did not work, they did not get paid.

27. Perdue and the Class Members receive a day rate.

28. Perdue and the Class Members do not receive overtime pay.

29. This is despite the fact that Perdue and the Class Members often work 11 or more hours a day, for 7 days a week, for weeks at a time.

30. Perdue, who lives in Louisiana, typically worked 21-day rotations in Pecos, Texas with three days off between rotations.

31. Apache required Perdue and the Class Members to attend daily inspector meetings at 6:00 a.m.

32. By 7:00 a.m. Apache required its inspectors to be on site doing their inspection work.

33. Perdue and the Class Members worked until Apache was done for the day, which was usually around 5:30 p.m., but was often later depending on the work.

34. Perdue received a day rate for each day he worked for Apache.

35. Perdue's day rate was $500 per day.

36. Although Perdue typically worked 7 days a week, for 11 or more hours per day, he did not receive any overtime pay.

37. Perdue and the Class Members received a day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

38. Perdue and the Class Members are not employed on a salary basis.

39. Perdue and the Class Members do not, and never have, received guaranteed weekly compensation irrespective of the days worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

40. Perdue and the Class Members work in accordance with the schedule set by Apache and/or its clients.

41. Perdue's work schedule is typical of the Class Members.

42. Apache controls Perdue's and the Class Members' pay.

43. Likewise, Apache controls Perdue's and the Class Members' work.

44. Apache requires Perdue and the Class Members follow Apache's and/or its clients' policies and procedures.

45. Perdue and the Class Members' work must adhere to the quality standards put in place by Apache and/or its clients.

46. Perdue and the Class Members are part of a permanent workforce employed to perform all of Apache's pipeline inspection work.

47. Apache provides all meaningful capital investment required to construct pipelines. Perdue and the Class Members do not provide anything beyond what employees ordinarily provide to do their work.

48. Perdue and the Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

49. As an Inspector, Perdue was responsible for ensuring Apache's and/or its clients' pipelines were completed according to established guidelines, specifications, and restrictions.

50. All the Class Members perform similar duties, inspecting pipelines, ensuring work is done according to established guidelines, specifications, and restrictions.

51. Perdue and the Class Members provide daily inspection reports to Apache personnel.

52. At all relevant times, Apache (and/or its clients) maintained control over Perdue and the Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

53. Perdue and the Class Members do not have the power to hire or fire any employees.

54. Perdue's working relationship with Apache is similar to Apache's relationship with the Class Members

55. Apache knew Perdue and the Class Members worked more than 40 hours in a week.

56. Apache knew, or showed reckless disregard for, whether the Class Members were entitled to overtime under the FLSA.

57. Nonetheless, Apache failed to pay Perdue and the Class Members overtime.

58. Apache willfully violated the FLSA.

## CAUSE OF ACTION

59. By failing to pay Perdue the Class Members overtime at one-and-one-half times their regular rates, Apache violated the FLSA's overtime provisions.

60. Because Apache knew, or showed reckless disregard for whether, its pay practice violated the FLSA, Apache owes these wages for the past three years.

61. Apache owes Perdue and the Class Members an amount equal to the unpaid overtime wages as liquidated damages.

62. Perdue and the Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## RELIEF SOUGHT

63. WHEREFORE, Perdue seeks relief against Apache as follows:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. Judgment pursuant to Section 16(b) of the FLSA finding Apache liable for unpaid back wages due to Perdue and the FLSA Class Members and for liquidated damages equal in amount to their unpaid compensation;

    c. Judgment awarding attorneys' fees, costs and pre- and post-judgment interest; and

    d. All such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**/s/ David I. Moulton**
By: _____
Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com


Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone:     (713) 352-1100
Telecopier:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**